**Hearing Date and Time: February 14, 2017 at 10:00 a.m.**
                                          **Objection Deadline: February 6, 2017 at 4:00 p.m.**

**PHILLIPS LYTLE LLP**
Nickolas Karavolas, Esq.  (NK2504)
Attorneys for the Trusts
The New York Times Building
620 Eighth Avenue, 23rd Floor
New York, New York  10018-1405
Telephone: (212) 759-4888
Facsimile: (212) 308-9079
E-mail: NKaravolas@PhillipsLytle.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:                                          Involuntary Chapter 11

ADLEBI INC,                                     Case No.: 16-12256 (MEW)

                        Debtor.

---

**MOTION OF THE TAX LIEN TRUSTS FOR RELIEF FROM THE AUTOMATIC**
**STAY PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY CODE**

      NYCTL 1998-2 Trust, NYCTL 2014-A Trust, and NYCTL 2015-A Trust (collectively, the "**Trusts**"), by their undersigned attorneys, Phillips Lytle LLP, file this motion ("**Motion**") for an Order, substantially in the form of the proposed order attached as **Exhibit A**, granting the Trusts relief from the automatic stay pursuant to section 362(d) of Title 11 of the United States Code ("**Bankruptcy Code**") to foreclose on their liens on certain real estate located at 72-58 Elizabeth Avenue, Far Rockaway, New York 11692, BBL 4-16065-0075 (the "**Property**").  In support of the Motion, the Trusts respectfully represent as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue for this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested in the Motion is section 362(d) of the Bankruptcy Code.

**BACKGROUND**

4. On August 2, 2016 ("**Petition Date**"), Yehuda Nelkernbaum (the "**Petitioning Creditor**") filed a chapter 11 involuntary petition against Adlebi Inc. (the "**Debtor**") under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("**Court**").

5. The Trusts hold tax lien claims against the Property ("**Tax Claims**") as of the Petition Date in the amount of $152,544.26 as evidenced by the Tax Lien Certificates, payoff statements and other supporting documentation attached as **Exhibit B**. Since the Petition Date, the Tax Claims have been accruing late interest at the applicable nonbankruptcy statutory rate pursuant to section 511(a) of the Bankruptcy Code.

6. The Tax Claims are secured statutory liens against the Property that are entitled to priority to all other liens and encumbrances on the Property pursuant to section 11-301 of the New York City Administrative Code. *See* N.Y.C. Administrative Code § 11-301 ("All taxes and all assessments and all sewer rents, sewer surcharges and water rents, and the interest and charges thereon, which may be laid or may have heretofore been laid, upon any real estate now

2

in the city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges.")

7. On October 12, 2011, NYCTL 1998-2 Trust commenced a state court tax lien foreclosure action ("**Foreclosure Action**") with respect to the Property by filing a summons and complaint in the Supreme Court of the State of New York, County of Queens ("**State Court**") [Index No. 23251/11]. At the time the Foreclosure Action was commenced, title to the Property was in the name of Vernam Basin Boat Repair Corp. ("**Vernam Basin**").

8. On March 28, 2012, the State Court entered a Judgment of Foreclosure and Sale ("**Judgment of Foreclosure**"). A copy of the Judgment of Foreclosure is attached as **Exhibit C**.

9. According to the terms of the Judgment of Foreclosure, the Property was scheduled for an auction sale on March 18, 2016, and the court-appointed referee, Mr. Morton Povman, Esq. ("**Referee**"), conducted the foreclosure sale of the Property on such date.

10. The Debtor was the successful bidder at the foreclosure sale with a bid of $380,000.00. The Referee issued and executed the Terms of Sale dated March 18, 2016 ("**Terms of Sale**"), and the Debtor agreed to comply with the Terms of Sale by delivering a signed Memorandum of Sale dated March 18, 2016 ("**Memo of Sale**"). A copy of the Terms of Sale and Memo of Sale are attached as **Exhibit D**. The Debtor deposited $40,000.00 with the Referee pursuant to the Terms of Sale.

11. According to Paragraph 2 of the Terms of Sale, a closing for the sale of the Property was initially scheduled for April 18, 2016. On the same date, the Petitioning Creditor filed an involuntary chapter 7 petition against the Debtor in the United States Bankruptcy Court for the Eastern District of New York [Case No. 16-41607-cec] ("**Prior Case**"). A copy of the involuntary petition filed in the Prior Case is attached as **Exhibit E**.

3

12. On June 16, 2016, the bankruptcy court entered an order dismissing the Prior Case due to, among other things, the Petitioning Creditor's failure to prosecute the case. A copy of the dismissal order in the Prior Case is attached as **Exhibit F**.

13. After dismissal of the Prior Case, foreclosure counsel to the Trusts and the Debtor agreed to re-schedule the closing for the sale of the Property for August 3, 2016 at 11:00 a.m. To confirm the closing date, on August 1, 2016, foreclosure counsel to the Trusts sent a "time of the essence" letter to the Debtor's counsel advising of the closing date and time and listing the checks necessary to close. A copy of the time of the essence letter dated August 1, 2016 is attached as **Exhibit G**. In addition, the letter stated, in all capitals, that the Debtor's failure to appear at the closing with the proper funds would result in forfeiture of the deposit and the scheduling of a new foreclosure sale.

14. The day before the closing, the Petitioning Creditor filed a second involuntary petition against the Debtor, this time under chapter 11 of the Bankruptcy Code and in this Court.

15. On November 14, 2016, the Court entered an Order to Show Cause [Dkt. No. 5] scheduling a hearing for November 30, 2016, and ordering parties to appear to show cause why an order for relief should not be entered in this case.

16. At a hearing on November 30, 2016, counsel to the Debtor appeared and advised the Court that the Debtor did not receive a summons from the Petitioning Creditor and requested an extension of time to file an answer to the involuntary petition. At the hearing, the Court directed the Debtor to file an answer on or before December 14, 2016. The Petitioning Creditor did not appear at the November 30, 2016 hearing.

17. On December 16, 2016, on the adjourned hearing date on the Court's Order to Show Cause, the Debtor filed a response to the petition [Dkt. No. 7] opposing the involuntary

4

petition on the grounds that: (i) the alleged debt owed by the Debtor to the Petitioning Creditor is disputed and, thus, cannot support a valid involuntary petition; and (ii) the Debtor is paying its debts when due.

18. The Court permitted the late response filed by the Debtor by entry of an order on December 16, 2016 [Dkt. No. 6].

19. At the December 16, 2016 hearing, the Petitioning Creditor appeared without counsel and advised the Court that he had advanced funds to the Debtor to subsidize the deposit left with the Referee pursuant to the Terms of Sale. He also alleged that the Debtor struggled to obtain title insurance and argued for the return of the deposit.[1]

20. At the hearing, the Court advised the Petitioning Creditor of the matters that must be proven in order to sustain an involuntary bankruptcy filing. The Court also directed that an evidentiary hearing on the involuntary petition be scheduled for January 10, 2017.

21. At the January 10, 2017 hearing, counsel to the Debtor advised the Court that the Debtor had withdrawn its opposition to the involuntary petition and the Debtor was directed to file a proposed order for relief. As of the date of this Motion, an order for relief has not been entered.

## ARGUMENT

### The Automatic Stay Should Be Terminated With Respect To The Trusts Pursuant to Section 362(d)(1) of the Bankruptcy Code

22. The Debtor is not the title owner of the Property, and numerous attributes of this case and the Prior Case suggest that the involuntary petition filed in this case was collusive. Notwithstanding this fact, in the abundance of caution, the Trusts seek relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to the extent that resuming the

---

[1] At the hearing, the Petitioning Creditor appeared to be advocating on behalf of the Debtor.

Foreclosure Action and rescheduling the sale of the Property implicates the automatic stay in effect in this case.

23. The Trusts seek relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code because the Foreclosure Action should be permitted to resume to allow the Trusts to complete the sale of the Property or, in the alternative, schedule a new auction sale.

24. Section 362(d)(1) provides that the court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

25. "Cause" is neither defined in the Bankruptcy Code nor its legislative history. *Lamarche v. Miles*, 416 B.R. 53, 57 (E.D.N.Y. 2009). The burden of proof on a motion to lift the automatic stay shifts from the movant to the debtor once the initial showing of "cause" is established. *Id.*

26. "Cause" to terminate the automatic exists where there is a desire to allow a proceeding outside of bankruptcy court to proceed, such as a state court foreclosure action. *See, e.g.*, *In re La Brada*, 132 B.R. 512, 517 (Bankr. E.D.N.Y. 1991) (terminating the automatic stay to permit a mortgagee to continue a state court foreclosure action).

27. In the seminal case of *In re Sonnax Industries*, the Second Circuit catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. 907 F.2d 1280 (2d Cir. 1990). These factors include: (i) whether relief would result in a partial or complete resolution of the issues; (ii) the lack of any connection with or interference with the bankruptcy case; (iii) whether the other proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (v) whether the debtor's insurer has assumed full responsibility for

6

defending it; (vi) whether the action primarily involves third parties; (vii) whether litigation in another forum would prejudice the interests of other creditors; (viii) whether the judgment claim arising from the other action is subject to equitable subordination; (ix) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (x) the interests of judicial economy and the expeditious and economical resolution of litigation; (xi) whether the parties are ready for trial in the other proceeding; and (xii) impact of the stay on the parties and the balance of harms. *Id.* at 1286. Not every factor will be relevant in every case. *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).

28. In this Case, consideration of the relevant *Sonnax* factors weigh heavily in favor of terminating the automatic stay for "cause."

29. First, the sale of the Property in the Foreclosure Action will resolve any and all issues between the Debtor, the Petitioning Creditor and the Trusts. As the Petitioning Creditor has admitted to the Court, the sole purpose of the involuntary petition was to stop the closing of the sale of the Property. As the Petitioning Creditor only claims funds loaned to the Debtor in contemplation of the sale of the Property, there are no bankruptcy issues for the Court to decide in this case. Moreover, the Foreclosure Action is an *in rem* proceeding with respect to real property that is not property of the Debtor's estate.

30. Second, granting the Trusts relief from the automatic stay will not have any economic impact on this bankruptcy case because the Property is not property of the estate and, upon information and belief, the Trusts do not have any direct claims against the Debtor.

31. Third, the State Court is a court of general jurisdiction that is well-versed in handling matters such as the Foreclosure Action. The Foreclosure Action has been pending in

7

the State Court since 2011 and a judgment has been entered by the State Court. Thus, the State Court is the court best suited to resolve any dispute between the Debtor and the Trusts.

32. Fourth, the continuation of the Foreclosure Action will not prejudice any of the Debtor's creditors because the Property is not property of the Debtor's estate. Further, any party asserting any interest in the Property would have been named as a party to the Foreclosure Action and received notice of the action.

33. Fifth, as set forth above, the Trusts do not have any claim directly against the Debtor which could be the subject of subordination or avoidance. In any event, the Trusts' liens on the Property are statutory liens pursuant to the New York City Administrative Code.

34. Sixth, it is in the interest of judicial economy that the Foreclosure Action be allowed to proceed. A Judgment of Foreclosure and Sale was entered in the State Court. All that would be necessary to complete the Foreclosure Action is to proceed with the closing of the sale of the Property or to schedule a new foreclosure sale. Allowing the Foreclosure Action to continue would result in the most expeditious and economical resolution of any dispute between the Debtor and the Trusts.

35. Seventh, the balance of harms weighs heavily in favor of terminating the automatic stay. The Tax Claims continue to accrue at a high rate of interest to the detriment of those parties entitled to the surplus proceeds of the sale of the Property, including those parties with an interest in the Property and Vernam Basin, as the owner of the Property.

36. Therefore, "cause" exists to lift the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.

37. Moreover, as the Petitioning Creditor admits, the sole purpose of the involuntary filing was to prevent the closing of the sale of the Property. It appears from the timing of both

involuntary filings and the statements made by the Petitioning Creditor before the Court, that the Petitioning Creditor filed this case on behalf of, or for the benefit of, the Debtor, and in bad faith. Further, the Debtor failed to comply with the Terms of Sale in delivering the balance of the purchase price under a "time is of the essence" contract of sale.

38. Bankruptcy filings by single-purpose "winning bidders" of foreclosure auction sales have recently become more prevalent. These filings abuse the bankruptcy process by using it to "stall out" a foreclosure sale for an extended period of time, giving the winning bidder a lengthy option period to make a decision as to whether or not to actually purchase the property. If the property declines in value, the "winning bidder" knows that, at worst, its downside is limited to the deposit. This bankruptcy case has many badges that suggest that it is one of this new breed of bad faith filings.

39. The timing of the involuntary filings, *i.e.*, on the eve of the scheduled property closing date, coupled with the dismissal of the Prior Case due to the Petitioning Creditor's lack of prosecution evidences "bad faith" to grant relief from the automatic stay for "cause" under section 362(d)(1). *See In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 758-60 (Bankr. S.D.N.Y. 1997) (corporation's filing of bankruptcy case warranted lifting of the automatic stay to allow secured creditor to proceed with foreclosure sale where petition was filed on the eve of foreclosure and debtor could not demonstrate change of circumstances from prior bankruptcy filing).

40. In light of all of the foregoing, the Trusts respectfully request that the Court terminate the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code.

9

## WAIVER OF MEMORANDUM OF LAW

41.     As this Motion does not raise any novel issues of law and the legal authority for the requested relief is set forth herein (or incorporated by reference), the Trusts respectfully request that the Court waive any memorandum of law requirement contained in the Local Rules of this Court.

## NOTICE

42.     Notice of this Motion has been provided to the Debtor, counsel to the Debtor, the Petitioning Creditor, Vernam Basin and the Office of the United States Trustee.

## CONCLUSION

**WHEREFORE**, pursuant to section 362(d) of the Bankruptcy Code, the Trusts respectfully request that the Court issue an Order: (i) granting the Trusts relief from the automatic stay so that they may exercise their state court rights and remedies with respect to the Property; and (ii) for such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         January 18, 2017

                                    PHILLIPS LYTLE LLP


                                    By:    /s/ Nickolas Karavolas
                                         Nickolas Karavolas, Esq. (NK2504)
                                         Attorneys for the Trusts
                                         The New York Times Building
                                         620 Eighth Avenue, 23rd Floor
                                         New York, New York 10018-1405
                                         Telephone: (212) 759-4888
                                         Facsimile: (212) 308-9079
                                         E-mail: NKaravolas@PhillipsLytle.com

Doc #05-482201.2